UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES R. ELLINGTON,

                              Plaintiff,

                                                                      Case # 15-CV-6310-FPG

v.

                                                                          DECISION AND ORDER

COUNTY OF MONROE,
MONROE COUNTY SHERIFF PATRICK M. O'FLYNN,
DEPUTY MATTHEW WHITING,
DEPUTY MICHAEL RIEGER,
DEPUTY TODD SUTHERLAND, and
JOHN DOES 1-12,

                              Defendants.

## INTRODUCTION

On a cold, January night in Rochester, New York, Plaintiff Charles R. Ellington was traveling to work on Interstate 390. As he approached Exit 19 onto Chili Avenue, he noticed a police car immediately behind him with the emergency lights activated. Ellington attempted to pull over, unintentionally slid off of the road, and became embedded in the snow. Fearing an encounter with the police, Ellington fled and hid in the garage of a house near 390. Police officers tracked Ellington using trained dogs and found him in the garage. He allegedly sustained several injuries from his subsequent arrest: a dog bite on his hand, a knee to the groin, and frost bite to his hands from exposure to the cold and unusually-tight handcuffs. This lawsuit followed.

Ellington filed his Complaint in the Supreme Court for the State of New York on April 21, 2015. ECF No. 1-5 at 14. Defendants then removed the action to this Court on May 20, 2015. ECF No. 1. Ellington's Complaint contains nine claims: (1) excessive force in violation of his Fourth and Fourteenth Amendment rights and 42 U.S.C. § 1983 against Defendants Deputies

Matthew Whiting, Michael Rieger, and Todd Sutherland and John Does 1 through 6; (2) a municipal liability claim against Defendants County of Monroe and Monroe County Sheriff Patrick M. O'Flynn; (3) assault and battery; (4) intentional infliction of emotional distress (IIED); (5) negligent infliction of emotional distress (NIED); (6) negligence against Whiting, Rieger, Sutherland, and the John Does; (7) *respondeat superior* liability against the County; (8) negligent supervision, retention, and training against the County and Sheriff O'Flynn; and (9) denial of effective medical care in violation of Ellington's Fourteenth Amendment rights and section 1983 against Whiting, Sutherland, and the John Does. ECF No. 1-5 at 2-14.

Defendants now move for summary judgment on all but Ellington's sixth and ninth claims for negligence and denial of effective medical care. *See* ECF No. 17-3. For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

On January 27, 2014, at approximately 10:45 p.m., Ellington was driving south on interstate 390. As he neared Exit 19 for Chili Avenue, he noticed a police car, driven by Sutherland, behind him with its emergency lights engaged. Ellington then attempted to pull over to the side of the road. As he was doing so, his car slid off of the road. Ellington exited the car once it stopped and ran.

Ellington ran for approximately ten to fifteen minutes. The temperature of the air surrounding him was approximately -2 degrees Fahrenheit. Ellington was wearing shoes, socks, pants, a thermal shirt, and a coat, but not gloves or a hat.

---

[1] The following facts are undisputed unless otherwise noted. All inferences and credibility assessments are viewed in a light most favorable to Ellington as the nonmoving party. *See Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017).

Ellington then found an empty garage at 251 Hinchey Street in Gates and concealed himself inside behind a mattress. He waited there for ten minutes. All told, Ellington was outside for approximately forty-five minutes, but did not feel cold when he entered the garage.

Rieger, his K9 partner Mic, and an unnamed Sheriff's deputy tracked Ellington to the garage. Rieger approached the garage and advised that he was going to release Mic into the garage. In response, Ellington pushed the mattress away and laid down on the ground. Rieger then released Mic and Mic "grabbed" Ellington's right wrist and hand.

It is disputed whether Rieger was involved with taking Ellington into custody and whether he saw anyone strike Ellington, but it is undisputed that Ellington was arrested "aggressively" and kneed in the groin.

An unknown law enforcement officer placed handcuffs on Ellington. It is disputed whether the handcuffs were too tight when placed on Ellington's wrist, but it is undisputed that Ellington described the handcuffs as tight.

Whiting, who was neither present for nor involved with Ellington's arrest, transported Ellington to the Monroe County Sheriff Zone B substation. Ellington asked Whiting to loosen his handcuffs before getting into the car to be transported.

Whiting had heat on in his car the whole night but rolled the front windows of the patrol car halfway down during the ride. On the way to the substation, Ellington mentioned that he was cold and that his handcuffs were tight. Whiting did not speak with Ellington during the transport.

Once they arrived at the substation, Whiting handcuffed Ellington to the railing of a ramp outside for approximately five minutes. Whiting then took Ellington inside the substation and Sutherland processed him.

While inside the substation, Rieger asked Ellington if Mic had bitten him and Ellington confirmed that he had. In response, at 12:38 a.m. on January 28, 2017, Rieger requested medical attention for Ellington and a Henrietta ambulance responded. While ambulance personnel were at the substation, Ellington felt a tingling sensation all over his hands and noticed that they were discolored. The personnel examined Ellington's hands while they were handcuffed and noted that there was a laceration on each of Ellington's hands: a one-to-two-centimeter laceration on the fourth finger of his left hand and a similarly-sized laceration on his right palm. They treated and bandaged his hands. An unnamed sheriff's deputy then signed a refusal of further treatment on Ellington's behalf and they left.

Before Ellington was released to his mother, Sutherland took him outside and placed him in Sutherland's patrol car where he waited for another forty-five minutes.

After he was released, Ellington's hands became painful and swollen; his girlfriend called an ambulance and he was taken to Rochester General Hospital and then transferred to the burn unit at Strong Memorial Hospital. At Strong, he was diagnosed with frostbite and dog bite wounds on his hands. At a subsequent procedure in March of 2014, some of Ellington's fingers were amputated. Since the surgery, Ellington has had difficulty performing tasks that he regularly performed before the surgery. Because of the injuries and surgery, Ellington becomes upset or angry easily and avoids spending time with people, including his friends.

## LEGAL STANDARD

A summary judgment motion should be granted where the moving party shows that "there is no genuine dispute as to any material fact" and that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when there can be but one reasonable conclusion as to the verdict, *i.e.*, it is quite clear what the truth is, and no rational

factfinder could find in favor of the nonmovant." *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("*Liberty Lobby*")) (quotation marks and citations omitted). On the other hand, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Id.* (citing *Liberty Lobby*, 477 U.S. at 248); *see also Liberty Lobby*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

## DISCUSSION

### I. The Claims Against John Does 1 Through 12 Are Dismissed.

As a preliminary matter, Ellington sued John Does 1 through 12 as Defendants in this case, but has yet to identify them despite receiving discovery from Defendants. The Court finds that Ellington has had sufficient time and opportunity to identify the John Doe Defendants and has given no indication that he has tried to identify them. Consequently, all claims against them are dismissed. *E.g.*, *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 301-02 (S.D.N.Y. 2009) (dismissing claims against John Doe defendants when plaintiff failed to identify them after conducting discovery).

### II. Ellington's Second Claim Is Dismissed Since He Has Abandoned It.

In the memorandum of law filed in opposition to Defendants' motion, Ellington states that he "is discontinuing [his] *Monell* claim set forth in [his] second cause of action." Consequently, his second claim is dismissed. *See Porter v. Gummerson*, No. 04-cv-988 (TJM/DRH), 2007 WL 446026, at *1 (N.D.N.Y. Feb. 8, 2007) (granting motion for summary judgment where plaintiff abandoned certain claims against defendants).

**III. Defendants Are Entitled to Summary Judgment for Ellington's Third Claim for Assault and Battery, But Not His First Claim for Excessive Force as to Rieger.**

For both claims, Defendants argue, among other things, that it is undisputed that neither Whiting, Rieger, nor Sutherland (the "named Defendants") used excessive force on or assaulted and battered Ellington. ECF No. 17-3 at 5. They further argue that, if the Court finds that any of them used force on Ellington, they are entitled to qualified immunity. *Id.* at 7-8. In response, Ellington argues that the tight handcuffs, aggressive arrest, and Mic's bite constituted excessive force and assault and battery, and that the named Defendants are not entitled to qualified immunity. *See* ECF No. 19-2 at 3-6.

As to the assault-and-battery claim, the Court agrees with Defendants. It is undisputed that (1) none of the named Defendants handcuffed Ellington, kneed him while he was arrested, or arrested him "aggressively" and (2) that Mic bit Ellington.[2] Consequently, none of the named Defendants can be held responsible for the tight handcuffs, the use of force, or the aggressive arrest. As for Mic's bite, while there is no dispute that it occurred, the Court can find no law supporting a claim for assault and battery against a police officer or his canine based on the latter biting a suspect. Moreover, Plaintiff has provided no support in his opposition to Defendants' motion. Consequently, Defendants are entitled to summary judgment as to Ellington's third claim and it is dismissed.

For the excessive-force claim, however, Ellington's argument prevails as to Rieger. It is undisputed that, on the evening Ellington was arrested, he was found in the garage, exited the garage, laid on the ground, and then Mic was released and bit him. ECF No. 19 at 6; ECF No. 21-1 at 1. Defendant police officers seeking summary judgment on an excessive force claim in similar

---

[2] In Ellington's deposition, he states that Mic "grabbed" his right wrist and palm, ECF No. 20-2 at 8, which Defendants do not dispute, ECF Nos. 19 at 6, 21-1 at 1. The Court assumes that "grabbing" is synonymous with "biting" in this context, since Ellington's hands were later observed to have wounds consistent with a dog bite.

circumstances have been repeatedly rebuffed by courts within the Second Circuit. *Raffone v. Nugent*, No. 3:13-cv-1589 (JBA), 2016 WL 199399, at *4 (D. Conn. Jan. 15, 2016) (denying summary judgment on excessive force claim where police dog was ordered to attack suspect who had surrendered to police); *Kavazanjian v. Rice*, No. 03-CV-1923 (FB)(SMG), 2008 WL 5340988, at *4 (E.D.N.Y. Dec. 22, 2008) (denying summary judgment on excessive force claim where police dog was released after suspect was handcuffed while lying on the ground); *see also Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (denying qualified immunity on excessive force claim where police dog bit suspect who was lying on the ground).

Additionally, the Court finds that Rieger is not entitled to qualified immunity on Ellington's excessive-force claim for Mic's bite. Qualified immunity shields federal and state officials from unnecessary trial proceedings unless "(1) [] the official violated a statutory or constitutional right, and (2) [] the right was clearly established at the time of the challenged conduct." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012).

A "government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Coollick*, 699 F.3d at 220 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (alteration omitted). "There is no need for a case on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *al-Kidd*, 563 U.S. at 741) (quotation marks omitted). As the Second Circuit has emphasized,

> [the] inquiry is not whether the officer *should have* acted as he did. Nor is it whether a singular, hypothetical entity exemplifying the "reasonable officer"—a creature akin to the "reasonable man" of the law of torts—*would have* acted in the same way. It is instead whether *any* reasonable officer . . . *could have* determined that the challenged action was lawful.

*Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (citation omitted). The Court uses an objective standard to evaluate whether a reasonable officer could have determined the action was lawful— his subjective motivation is irrelevant. *See Coollick*, 699 F.3d at 220.

Here, no reasonable officer could have determined that releasing Mic to bite Ellington, who had surrendered by laying on the ground, was lawful. The undisputed facts show that Rieger's use of force—allowing Mic to bite Ellington—was objectively unreasonable because Ellington was laying on the ground. *See Kavazanjian*, 2008 WL 5340988, at *4; *see also Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) ("Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (quotation marks omitted)). Furthermore, Ellington's right to be free from excessive force in those specific circumstances was clearly established at the time. *See id.* Consequently, while Whiting and Sutherland are entitled to summary judgment on Ellington's first claim, Rieger is not entitled to either summary judgment or qualified immunity and the claim survives as to him.

### IV. Ellington's Fourth and Fifth Claims Are Dismissed.

"For both negligent and intentional infliction of emotional distress, a plaintiff must show 'that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Ivery v. Baldauf*, 284 F. Supp. 2d 426, 441 (W.D.N.Y. 2018) (quoting *Berrios v. Our Lady of Mercy Med. Ctr.*, 20 A.D.3d 361, 362 (1st Dep't 2005)). "In New York, claims for intentional infliction of emotional distress are 'extremely disfavored,' and '[o]nly the most egregious conduct has been found sufficiently extreme and outrageous to establish' such a claim." *Id.* (quoting *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488 (S.D.N.Y. 2013)); *see also Semper v.*

*New York Methodist Hosp.*, 786 F. Supp. 2d 566, 586 (E.D.N.Y 2011) ("[T]his highly disfavored cause of action is almost never successful.").

Here, Defendants are entitled to summary judgment on Ellington's fourth and fifth claims. First, as discussed above, none of the named Defendants handcuffed, arrested, or assaulted and battered Ellington. Thus, neither claim can lie against the named Defendants for those acts. Ellington does allege, however, that Mic's bite and Whiting handcuffing him outside for five minutes constitute IIED.

In support of his claims, Ellington argues the following: "In the case at bar there are facts alleged against the defendants that would support both the intentional and negligent infliction of emotional distress." ECF No. 19-2 at 6. The Court disagrees. While both incidents may have caused Ellington emotional distress and discomfort, neither event, in isolation or combined, demonstrates conduct that is so outrageous and extreme as to be "beyond all possible bounds of decency." *See Cooper v. Ernst*, No. 1:10-cv-271, 2011 WL 1897441, at *12 (S.D. Ohio Apr. 13, 2011), *report and recommendation adopted*, 2011 WL 1898942, at *1 (May 18, 2011) (granting motion to dismiss IIED claim where police dog ran over one-and-a-half-year-old child and defendant, the latter of whom was afraid of dogs, injuring both). Consequently, Defendants are entitled to summary judgment on Ellington's fourth and fifth claims and they are dismissed.

**V.     Ellington's Seventh Claim Survives Under New York Law.**

Defendants seek summary judgment on Ellington's seventh claim because municipalities cannot be held liable for a violation of section 1983 under the doctrine of *respondeat suprerior*. ECF No. 17-3 at 11. As Ellington points out, however, under New York law, municipalities "may be liable for [] common law torts . . . committed by their employees under the doctrine of *respondeat superior*." Ellington's seventh claim is brought under New York law, not section 1983;

consequently, it survives since his sixth claim for negligence also survives. Defendants' motion is therefore denied as to Ellington's seventh claim.

**VI.   Ellington's Eighth Claim Is Dismissed Because the Named Defendants Were Acting Within the Scope of Their Employment.**

Ellington's eighth claim does not enjoy the same fate. "To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment." *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013) (quotation marks omitted). At no point has Ellington claimed that Defendants were acting outside the scope of their employment; in fact, the undisputed facts show that they were acting within the scope of their employment for the relevant time period. Ellington's eight claim is therefore dismissed. *See Velez*, 730 F.3d at 136-37.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 17, is GRANTED in part and DENIED in part. Ellington's second, third, fourth, fifth, and eighth claims are dismissed and his first, sixth, seventh, and ninth claims survive. The Clerk of Court is directed to terminate John Does 1-12 as Defendants in this case; all other Defendants remain. By separate order, the Court will schedule a status conference to set a trial date.

IT IS SO ORDERED.

Dated:  December 17, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court